IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Prisoner's Name: | Iviva Paige |
| IDOC Register No: | R83317 |
| Confinement: | Logan Correctional Center |
| | 1096 1350th Street, Lincoln, IL 62656 |

---

| | | |
|---|---|---|
| IVIVA PAIGE, | \| | |
|     Petitioner, | \| | |
| | \| | |
|  - vs - | \| | State Trial Court No.: 06 CR 25831 |
| | \| | |
| Jean Case, Warden, | \| | State Appeal No.: 1-20-0746 |
| | \| | |
| Logan Correctional Center, | \| | |
|     Respondent. | \| | |

---

PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. §2254 – STATE
PRISONER

---

Counsel for Petitioner:

Steven A. Greenberg
Nick Burris
GREENBERG TRIAL LAWYERS
53 W. Jackson Blvd., Suite 315
Chicago, IL 60604
(312) 399-2711
*Steve@GreenbergCD.com*
*Nick@GreenbergCD.com*

Christopher T. Grohman
Benesch Friedlander Coplan Aronoff LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606-4637
(312) 212-4943
*CGrohman@beneschlaw.com*

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................. 1

II.  Petition For Writ Of Habeas Corpus Under §2254 .............................. 3

   A. Procedural History and Required Information ............................. 3

      1. Petitioner appealed the conviction and sentence imposed. ...................... 3

   B. Collateral Proceedings ................................................. 3

   C. Petitioner's Claims ................................................... 4

   D. Representation ........................................................ 4

   E. Sentence ............................................................. 5

III. FACTS ......................................................................... 5

IV. ARGUMENT ................................................................... 11

V.  CONCLUSION AND PRAYER FOR RELIEF ................................. 18

## TABLE OF AUTHORITIES

1.  *Kubat v. Thieret,* 867 F.2d 351, 359 (7th Cir.) .................................................. 1
2.  *Strickland v. Washington*, 466 U.S. 669 (1984) ........................................ 1, 13
3.  *Lewis v. Lane,* 832 F.2d 1446, 1452 (7th Cir. 1987) ...................................... 1
4.  *Kimmelman v. Morrison,* 477 U.S. 365, 91 L. Ed. 2d 305,
    106 S. Ct. 2574 (1986)) ................................................................................... 1
5.  *Galowski v. Murphy,* 891 F.2d 629, 635 (7th Cir., 1989) ............................... 1
6.  *People v. Knapp,* 2020 IL 124992 ............................................................. 2, 11
7.  *Shannon v. Hepp,* 27 F.4th 1258 (7th Cir., 2022) ..................................... 2, 12
8.  *People v. Paige,* 403 Ill.App.3d 1104 (2010)
    (1st Dist., Rule 23 Order) .......................................................................... 3, 13
9.  *People v. Paige,* 949 N.E.2d 663 (2011) ......................................................... 3
10. *People v. Paige,* 2022 Ill.App. (1st. 200746-U) ............................................... 4
11. *People v. Paige,* 2022 WL 5028286 (September 28, 2022) ............................. 4
12. *People v. Paige,* 2020 IL App (1st) 200746-U  ............................................... 5
13. *People v. Paige,* 403 Ill.App.3d 1104, 993 N.E.2d 149 (2010) ........................ 7
14. *United States v. Goodwin,* 770 F.2d 631 (7th Cir. 1985)  ............................. 11
15. *Rogers-Bey v. Lane,* 896 F.2d 27 283 (7th Cir. 1990)  .................................. 12
16. *Willis v. Aiken,* 8F.3d 556 (7th Cir. 1993) ................................................... 12
17. *Hartsfield v. Dorethy,* 949 F.3d 307 (7th Cir.) ............................................. 12
18. *McMann v. Richardson*, 397 U. S. 759, 771, n. 14, 90 S. Ct. 1441,
    25 L. Ed. 2d 763 (1970)  ............................................................................. 13
19. *Garza v. Idaho*, 139 S. Ct. 738, 743-744 ..................................................... 13
20. *United States v. Cronic*, 466 U. S. 648, 659, 104 S. Ct. 2039,
    80 L. Ed. 2d 657 (1984) ......................................................................... 13, 14
21. *Penson v. Ohio*, 488 U. S. 75, 88, 109 S. Ct. 346,
    102 L. Ed. 2d 300 (1988) ............................................................................. 13
22. *Patrasso v. Nelson,* 121 F.3d 297, 304 (7th Cir. 1997) ................................. 14
23. *United States v. O'Leary,* 856 F.2d 1011, 1015 (7th Cir. 1988) ................... 14
24. *United States v. Hodges,* 259 F.3d 655, 659 n.3 (7th Cir. 2001) ................. 14
25. *Jones v. United States,* 167 F.3d 1142, 1145 ............................................... 14
26. *United States v. Jemison*, 237 F.3d 911, 916 n.8 (7th Cir. 2001) ................. 14
27. *Rock v. Arkansas*, 483 U.S. 44, (1987) ......................................................... 15
28. *Starkweather v. Smith,* 574 F.3d 399, (7th Cir. 2009) ................................. 15
29. *Barrow v. Uchtman,* 398 F.3d 597, 608 (7th Cir. 2005) ............................... 16
30. *Alexander v. United States,* 219 Fed. Appx. 520 (7th Cir. 2007) ................. 16
31. *Johnson v. Zerbst,* 304 U.S. 458 (1938) ....................................................... 17

## I.    INTRODUCTION[1]

'The purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial.' *Kubat v. Thieret,* 867 F.2d 351, 359 (7th Cir.) (quoting Strickland, 466 U.S. at 689), cert. denied, 493 U.S. 874, 107 L. Ed. 2d 159, 110 S. Ct. 206 (1989). 'The essence of an ineffective assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect.' *Lewis v. Lane,* 832 F.2d 1446, 1452 (7th Cir. 1987) (quoting *Kimmelman v. Morrison,* 477 U.S. 365, 374, 91 L. Ed. 2d 305, 106 S. Ct. 2574 (1986)), cert. denied, 109 S. Ct. 83 (1988).

*Galowski v. Murphy*, 891 F.2d 629, 635 (7th Cir., 1989).

Iviva Paige is serving a 23-year sentence for murder, although she acted in self-defense. In October 2006, she stabbed a lady during a fight that the appellate court described as "mutual combat."  Her family obtained private counsel, attorney Herbert Goldberg. He represented her from early on, but he never visited Ms. Paige at the county jail where she was detained, never sat down and reviewed the discovery or police reports with her, never had her fully describe what had occurred, and never discussed any testimony she would offer.  While counsel did assert the affirmative defense of self-defense and told her he planned on her testifying, when it came time

---

[1] Exhibits – The following are attached as exhibits and incorporated herein:

    A.  Original Petition for Post-Conviction Relief;
    B.  Supplemental Petition for Post-Conviction Relief;
    C.  State's Answer to Supplemental Petition;
    D.  Trial court's order granting post-conviction relief;
    E.  The evidentiary hearing transcript;
    F.  Decision of the First District Appellate Court reversing post-conviction relief;
    G.  Petition for Leave to Appeal;
    H.  The decision on direct appeal; and
    I.  A copy of the trial court docket.

for the Defendant's case he leaned over and advised her to tell the trial judge she did not wish to testify. This was understandable under the circumstances, he had no idea what she would say, how she would describe the fight. Ms. Paige was flying solo, in essence representing herself, "Goldberg said he gave her no advice on the matter." Ex. D, Trial Court Order.

In 2010, Ms. Paige filed a Post-Conviction Petition in state court. Eventually the public defender was appointed to assist her with her Petition, and the matter proceeded to a hearing in 2020. The trial court found in favor of Ms. Paige, holding that her trial counsel was ineffective in advising her on whether to testify in her own defense at trial.

The State appealed. Relying upon *People v. Knapp,* 2020 IL 124992, the appellate court held that because Ms. Paige had not expressed a desire to testify when asked if she wanted to do so at her trial she had waived any claim of ineffective assistance. To the Illinois court, in order to preserve the claim, an individual must positively assert at their trial that they wish to testify, or the claim is forever barred, no matter the circumstances. This rule forecloses any claim of ineffective assistance in the context of a defendant failing to testify, as long as the trial court has inquired if they wished to. The dissenting judge criticized the majority's "rigid and absolute" rule that eliminated ineffective assistance of counsel claims, no matter the circumstances.

The holding is clearly contrary to, or an unreasonable application of existing federal constitutional principals. *See Shannon v. Hepp*, 27 F.4th 1258 (7th Cir. 2022).

## II.     Petition For Writ Of Habeas Corpus Under §2254

The Petitioner, IVIVA PAIGE, respectfully Petitions this Court to issue a Writ of Habeas Corpus. This Court has jurisdiction over this Petition pursuant to 28 U.S.C. §2254, as the Petitioner is in custody on the judgment of an Illinois state court and has exhausted all remedies available to her with the courts of Illinois. This Petition consists of substantial and significant constitutional violations that occurred leading up to and during her trial—these violations, as explained throughout this Petition, mandate a Writ. The petitioner requests an evidentiary hearing and all appropriate relief from this unconstitutional conviction, including the unconditional discharge of her confinement on these charges.

### A.  Procedural History and Required Information

1. Petitioner appealed the conviction and sentence imposed.

   Direct Review:
   a) Illinois Appellate Court, First District.
   b) Affirmed *People v. Paige*, 403 Ill.App.3d 1104 (1st Dist., 2010 (Rule 23 Order). (Ex. "H")
   c) The Petition for Leave to Appeal was denied. *People v. Paige,* 949 N.E.2d 663 (2011).

### B.   Collateral Proceedings

1. Post-conviction relief related to the claims presented in this Habeas Petition was sought by Paige in state court.

2. The Post-Conviction Petition was filed on October 4, 2011. A Supplemental Petition was filed on March 22, 2018. The State responded on August 15, 2018. (Exs. A, B & C).

3. The matter proceeded to an evidentiary hearing on January 28, 2020 (Ex. "E").

3

4. Post-conviction relief related to the claim presented in this Habeas Petition was granted on March 5, 2020 (Ex. D).

5. The decision granting post-conviction relief was reversed in *People v. Paige,* 2022 Ill. App. (1st) 200746-U (June 13, 2022) (Ex. F).

6. Leave to Appeal was denied in *People v. Paige,* 2022 WL 5028286 (September 28, 2022).

7. Petitioner has not previously filed a Petition for a Writ of Habeas Corpus in federal court.

8. There are no other collateral proceedings pending.

**C.    Petitioner's Claims**

1. In this Habeas Petition, Paige raises the following claims:

   a) Whether a waiver of the right to testify on one's own behalf is knowingly and intelligently made, when counsel has failed to review discovery with the Defendant, failed to discuss the case with the Defendant, and failed to review any potential testimony the Defendant may seek to offer, anytime a Defendant indicates on the record they do not wish to testify.

**D.    Representation**

1. At Trial and Sentencing:
   Herbert Louis Goldberg
   1000 Old Skokie Blvd.
   Suite 344
   Northbrook, Illinois  60062

2. On Appeal:
   Direct Appeal and Petition for Leave to Appeal:

   Office of the State Appellate Defender
   1st Judicial District
   203 N. LaSalle Street
   24th Floor
   Chicago, Illinois  60601

4

3. In any Post-Conviction proceeding:

> Office of the Public Defender
> 69 W. Washington
> 15th Floor
> Chicago, Illinois  60602

4. On Appeal from Post-Conviction Relief:

> Office of the Public Defender
> 69 W. Washington
> 15th Floor
> Chicago, Illinois  60602

> Steven A. Greenberg
> Greenberg Trial Lawyers
> 53 W. Jackson Blvd.
> Suite 315
> Chicago, Illinois  60604

### E.     Sentence

Ms. Paige is still serving her 23-year sentence.

## III.     FACTS[2]

Iviva Paige was convicted of murder. EHT. 20. On October 11, 2016, Paige and a group of friends went to a nightclub called Caroline's, where she encountered an ex-boyfriend who had been violent towards her, with two women. They all got into an argument. She and her group left Caroline's and went to another club named Vanity's. Soon, the ex-boyfriend and the two women who were with him appeared at Vanity's, and Paige and the women again began fighting. The two women with the ex-boyfriend were escorted outside, while Paige and her group were told to remain

---

[2] The facts detailed herein are taken from the "Background" portion of the appellate court opinion, *People v. Paige,* 2020 IL App (1st) 200746 – U (Ex. F), and the evidentiary hearing transcript (Ex. E) ("EHT. XX").  The transcript page citations are to the original page numbers.

inside. An hour later, when Paige and her group left the second club, the two women were waiting and, upon seeing Paige, began spraying her and her friends with mace or pepper spray. Another fight broke out. Believing that she was about to be stabbed, Paige, defending herself, stabbed one of the women, Katrina, who died from her wound. Paige and her friend left the scene but were later arrested. On direct appeal the court described the outside fight as "mutual combat." Ex. H, pg. 11.

At trial, Paige asserted self-defense or, alternatively, that her actions constituted second-degree murder or involuntary manslaughter. Yet Paige did not testify in her own defense. Before her counsel rested, the Court had the following colloquy with her:

> THE COURT: Ms. Paige, you have a constitutional right to testify in this case. You also have a constitutional right not to testify in this case. You're the only person that can make that decision. After listening to the testimony in this case and discussing this matter with your attorney, is it your desire to testify or not testify in this case?
>
> DEFENDANT: No.
>
> THE COURT: OK, when you say no, does that mean you don't want to testify?
>
> DEFENDANT: I don't want to testify.

Defense Attorney Goldberg then called one witness, a security guard, before resting. After arguments, including counsel's argument that Paige was acting in self-defense, the trial court found her guilty and sentenced her to 23 years in prison. When ruling, the trial court noted the lack of any evidence of mitigating factors to support a finding of second-degree murder or justification to support self-defense. *See People*

*v. Paige,* Ex. "H," pg. 11.[3] The conviction was affirmed on direct appeal. *People v. Paige,* 403 Ill.App.3d 1104, 993 N.E.2d 149 (2010) (unpublished under Illinois Supreme Court Rule 23).

In 2011, Paige filed a *Pro-Se* Post-Conviction Petition. *See* Ex. A. The Court appointed counsel, who filed a Supplemental Petition in March 2018. *See* Ex. B. The Supplemental Post-Conviction Petition included claims that Paige had not knowingly and intelligently waived her right to testify, and that counsel had rendered ineffective assistance when he failed to review discovery with her or discuss her potential testimony with her. The trial court advanced the claim to a third-stage evidentiary hearing, which took place on January 28, 2020.

Paige testified that her lawyer was Herb Goldberg. EHT. 20. Her mother had arranged for Goldberg's representation in this case. EHT. 38. Paige explained in the two years she was at the Cook County jail, Goldberg never visited her.[4] They had only talked about the case one time face-to-face, and the conversation was a brief one, early on, while Paige was in the crowded bullpen behind the courtroom. Although Goldberg repeatedly told her he would come to see her at the jail, he never did, and they did not speak about the facts of the case after court dates. Goldberg never showed her police reports or other discovery materials, and when they spoke by phone, they never discussed the facts because the calls were recorded. Paige never told her entire

---

[3] In her direct appeal, Paige sought to have the conviction be reduced to second-degree murder. That was understandable since she had not offered any evidence in support of self-defense.

[4] Paige was detained from the date of her arrest in October 2006 through trial.

7

story to Goldberg. EHT. 38-42. Further, Goldberg never interviewed the friends who were with her that night. EHT. 20-23.

Paige explained that it was always her intention to testify at trial, and her attorney had expressed a desire to have her do so, given that it is a necessity in a self-defense case. But then, "when it came time to testify, he [Goldberg] changed his mind" and told Paige that it was not a good idea. He instructed her to say 'no' when Judge Crane [the trial judge] asked her if she wished to testify, and that's why she did so. EHT. 24-25. Paige had wanted to testify and give her account of the incident. EHT. 26. *See* Trial Court Order, Ex. D, pgs. 11-12;

At the evidentiary hearing, Paige explained that she would have testified that on October 11, 2006, she was with her sister, Claretha, her sister-in-law, Keisha, and a friend named Leslie. EHT. 29. While they were at a club called Caroline's, she saw her ex-boyfriend, Devon, with two of his friends, Roshanda and Katrina. Devon had been violent towards Paige in the past. EHT. 32. He and Paige had a brief, heated interaction at Caroline's. Claretha told Paige it was time to go, and they left for a club named Vanity's. Paige was worried about Devon attacking her, so she asked Claretha if she had anything Paige could use to protect herself if Devon came near. Claretha gave her a steak knife, which Paige put inside her purse. EHT. 33.

Devon and his group also went to Vanity's, following Paige. There, Paige got into a fight with Devon and Katrina on the upstairs level. EHT. 35. The bouncers made Devon and his group leave, telling Paige and her group to stay inside. They remained for about an hour. When she walked out of Vanity's, Devon's friends

8

Katrina and Roshanda were waiting and sprayed her with mace or pepper spray. EHT. 35. The two again got into a fight. Paige saw Roshanda walk over to a car that had pulled up, retrieve a knife, and hand it to Katrina. As Roshanda came close, Paige, who had fallen to the ground, grabbed the knife from her purse and "came up swinging because she was coming toward me with the knife." EHT. 36. Paige and her friends then left.

Paige revealed that she had told the trial judge she did not want to testify because Goldberg had told her to say that when asked by the judge. EHT. 54 ("I didn't know I was supposed to tell him that my lawyer told me not to testify.")

Attorney Goldberg also testified at the January 28, 2020, hearing. On most of the crucial points his testimony mirrored Paige's, including their lack of contact and the failure to discuss the facts. But he denied he told her not to testify, instead saying he merely told her she had the option to, and it was her choice. Importantly, he agreed he had never reviewed her potential testimony with her.

Goldberg had been licensed to practice law in Illinois in 1976. He had exclusively practiced criminal law since that time. EHT. 74. Goldberg explained that during his first meeting with Paige, when she was in the holding cell, he discussed the charges, defenses, and witnesses. He said that she had told him her side of the story at that time. He claimed to have reviewed the discovery with Paige when she was behind the courtroom during some of the court dates, although he was short on

9

details, EHT. 75-77; 80; 88-89.[5] They would not discuss anything of substance on the telephone. EHT. 86. Goldberg opined it was unnecessary to visit her in the jail, and he did not recall ever meeting with her at the Cook County jail.

Goldberg denied telling Paige to tell the judge that she did not want to testify, instead saying it was completely up to her – essentially abdicating his responsibility to advise his client on the most crucial aspect of her case. EHT. 79 ("A. No. All I do with clients basically is tell them they have the right to testify, they've sat through the evidence, evaluated the evidence and if they want to testify, they can testify. · If they don't want to, they can't. I don't tell them whether to testify or not to testify.") He did recall telling her that she could tell her version of events if she took the stand, but he did not ever review her potential testimony with her. EHT. 90.

The trial court found that Paige had made a substantial showing she was deprived of her constitutional rights and granted post-conviction relief, vacating her conviction and awarding her a new trial. It held that counsel had never discussed her potential testimony "with any strategic considerations." Ex. D, pg. 11. It noted that Paige had explained her testifying was hardly discussed, and Goldberg had offered no advice other than to inform her that she had a right to testify. The trial court wrote "[I]t is clear that Goldberg did not discuss the pros and cons of having Paige testify, practice testimony with her, or discuss potential questions she could expect on direct or cross-examination. The lack of anything along these lines is especially

---

[5] Goldberg filed his appearance on November 30, 2006. By then, the case had been assigned to Judge Crane, who was sitting in a courtroom at 26th & California. All of the in-custody defendants are detained together behind the courtroom. EHT. 80-81.

significant since Paige had pled self-defense, which as a matter of law, puts the Defendant's perspective at issue. Moreover, the Defendant's testimony would be highly relevant and almost necessary to convey to the trier of fact, what the Defendant was experiencing and believed at the time of the offense." Order, Ex. D, pgs. 11-12.

The state appealed. In a Rule 23 Order dated June 13, 2022, the appellate court reversed over a dissent, holding that the Illinois Supreme Court's decision in *People v. Knapp,* 2020 IL 124992, foreclosed relief. In the appellate court's view, the Illinois Supreme Court had held that failure to assert a desire to testify at trial waives a claim that an individual unknowingly or involuntarily waived their right to testify, or received ineffective assistance in considering whether to testify. However, the appellate court failed to give reasons for rejecting Paige's more nuanced argument, that trial counsel was ineffective by his own admission for failing to advise her on whether she should testify at a trial where she asserted self-defense, or to even discuss the substance of her potential testimony and the facts of the case. The Supreme Court subsequently denied leave to appeal.

## IV. ARGUMENT

To be sure, the fact that Antonio decided not to testify does not foreclose his claim of ineffectiveness as to Hart. Antonio's claim, properly understood, is that his decision not to testify was tainted by Hart's purported failures of investigation, preparation, and advice vis-à-vis Antonio's prospective testimony—specifically, that Hart did not apprise himself of the details necessary to appropriately advise Antonio on whether or not to testify, that he failed to convey to Antonio that it was imperative Antonio testify in support of the self-defense claim, and that he did not prepare Antonio to take the witness stand should he decide to testify. *See United States v. Goodwin*, 770 F.2d 631, 637 (7th Cir.

11

1985) ("It is primarily the responsibility of the defendant's counsel ... to advise the defendant on whether or not to testify and to explain the tactical advantages and disadvantages of doing so."); *Rogers-Bey v. Lane*, 896 F.2d 279, 283 (7th Cir. 1990) (applying Strickland to petitioner's claim that his counsel improperly advised him not to testify), modified in other respects by *Willis v. Aiken*, 8 F.3d 556, 563-66 (7th Cir. 1993); cf. *Hartsfield v. Dorethy*, 949 F.3d 307, 312-13 (7th Cir.) (ineffectiveness claim is the appropriate vehicle for contention that counsel violated defendant's right to testify), cert. denied, 141 S. Ct. 270, 208 L. Ed. 2d 35 (2020).

*Shannon v. Hepp*, 27 F.4th 1258, 1269 (7th Cir., 2022)

The decision of the Illinois Appellate Court was contrary to or involved an unreasonable application of clearly established federal constitutional law. Plainly, Paige's claim of ineffective assistance was the proper way to present her claim. Her failure to tell the trial court at the time of trial she wished to testify cannot foreclose a later *Strickland* challenge. Her decision had as its foundation the lack of assistance. The concept that merely because the trial court inquired at the time of the waiver the decision not to testify is immune from challenge is contrary to all established federal constitutional precedent.

The reasoning of the Illinois appellate court is completely circular. According to Illinois precedent, a criminal defendant who receives ineffective assistance in deciding whether to testify in their case waives any claim that they did not receive effective assistance if they tell the court that they do not wish to testify based upon the lack of assistance. The waiver occurs regardless of whether they were properly advised. It is unchallengeable. That makes no sense under *Strickland.* If a defendant's attorney provides ineffective assistance, the decision that the defendant

12

makes, predicated upon the attorney's advice, cannot be knowingly or intelligently made, or strategic.

"The Sixth Amendment guarantees criminal defendants 'the right . . . to have the Assistance of Counsel for [their] defence.' The right to counsel includes 'the right to the effective assistance of counsel.' *Strickland v. Washington*, 466 U. S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (quoting *McMann v. Richardson*, 397 U. S. 759, 771, n. 14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970))." *Garza v. Idaho*, 139 S. Ct. 738, 743-744. The *Garza* court continued by noting in certain circumstances prejudice is presumed "'In certain Sixth Amendment contexts,' however, 'prejudice is presumed.' Ibid. For example, no showing of prejudice is necessary 'if the accused is denied counsel at a critical stage of his trial,' *United States v. Cronic*, 466 U. S. 648, 659, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), or left 'entirely without the assistance of counsel on appeal,' *Penson v. Ohio*, 488 U. S. 75, 88, 109 S. Ct. 346, 102 L. Ed. 2d 300 (1988). Similarly, prejudice is presumed 'if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing. *Cronic*, 466 U. S., at 659, 104 S. Ct. 2039, 80 L. Ed. 2d 657." *Garza*, 139 S. Ct. at 744. The case here is exactly where defense counsel, because he never met with the defendant to review the facts of the case or to make any strategic decisions, and failed to review with the defendant her version in a self-defense case, and did not allow the court to hear the facts that would have subjected the prosecution's case to meaningful adversarial testing.

Here, where counsel failed to provide any meaningful representation on so many levels prejudice should be presumed, "In an abandonment claim, prejudice is

13

presumed. *United States v. Cronic,* 466 U.S. 648, 658-60, 80 L. Ed. 2d 657, 104 S. Ct. 2039 (1984); *Patrasso v. Nelson,* 121 F.3d 297, 304 (7th Cir. 1997); *see also United States v. O'Leary,* 856 F.2d 1011, 1015 (7th Cir. 1988) ('The Sixth Amendment right to counsel, of course, guarantees more than just a warm body to stand next to the accused during critical stages of the proceedings; an accused is entitled to an attorney who plays a role necessary to ensure that the proceedings are fair.')." *United States v. Hodges*, 259 F.3d 655, 659.

Equally, a claim counsel was ineffective, based upon advice that counsel provided, is not the type of claim that can be waived. The situation should be no different when evaluated by this Court from where a defendant is advised to plead guilty, and that advice is itself ineffective. The conclusion cannot drive the analysis in an ends justify the means way. "Justice dictates that a claim of ineffective assistance of counsel in connection with the negotiation of a cooperation agreement cannot be barred by the agreement itself--the very product of the alleged ineffectiveness. To hold otherwise would deprive a defendant of an opportunity to assert his Sixth Amendment right to counsel where he had accepted the waiver in reliance on delinquent representation." *Jones v. United States*, 167 F.3d 1142, 1145. *See* also *United States v. Jemison*, 237 F.3d 911, 916 n.8 (7th Cir. 2001); *United States v. Hodges*, 259 F.3d 655, 659 n.3 (7th Cir. 2001)  (appellate and collateral review waivers cannot be invoked against claims that counsel was ineffective in the negotiation of the plea agreement).

14

The right of a defendant to testify on his own behalf is, "essential to due process of law in a fair adversary process." *Rock v. Arkansas*, 483 U.S. 44, 51 (1987). Accordingly, and appropriately, cases "have held that incorrect advice that induces a defendant to waive his right to testify can constitute ineffective assistance." *Starkweather v. Smith,* 574 F.3d 399, 403 (7th Cir. 2009). Paige received ineffective assistance of counsel when her attorney told her to answer "no" in response to the trial court's question about whether she wished to testify. She received ineffective assistance of counsel when her attorney failed to review the facts with her, and, failed to explain the tactical advantages and disadvantages of testifying, instead leaving the decision up to her, without any guidance.

The Illinois court's determination that a Defendant must assert their right to testify at trial, or it is waived, ignores any need that the attorney engaged in meaningful representation and provided advice to their client. It ignores that here there is no evidence the attorney ever fulfilled his role; he admitted as much. Failing to consult with your client is contrary to what clearly established principals require.

The trial court found that Goldberg never discussed potential testimony with any strategic considerations. Goldberg himself admitted "he offered no advice other than to inform Paige she had the right to testify. In other words, Goldberg gave no strategic reason to account for Paige not testifying. Even with conflicting accounts, it is clear that Goldberg did not discuss the pros and cons of having Paige testify, practice her testimony with her, or discussed potential questions that she could expect on direct or cross-examination. The lack of anything along these lines is

especially significant, since Paige had pled self-defense which, as a matter of law, puts the Defendant's perspective at issue." *See* Ex. D, Trial Court Order, pgs. 11-12.

Properly analyzed, the inquiry is whether counsel's malfeasance caused the individual to forego testifying, and if it did, was there a reasonable probability that the failure to testify affected the outcome of the trial. *Barrow v. Uchtman,* 398 F.3d 597, 608 N.12 (7th Cir. 2005), cited in *Alexander v. United States,* 219 Fed. Appx. 520 (7th Cir. 2007). Here, the trial court deemed both prongs satisfied when it noted that, "Neither Paige's nor Goldberg's account of trial preparation indicate that her potential testimony was discussed with any strategic considerations. In Paige's telling, her possible testimony was hardly discussed, and she was at most told 'it's not a good idea' right before she had to decide whether to testify or not. According to Goldberg, he offered no advice other than to inform Paige she had the right to testify. In other words, Goldberg gave no strategic reason to account for Paige not testifying. Even with conflicting accounts, it is clear that Goldberg did not discuss the pros and cons of having Paige testify, practice testimony with her, or discuss potential questions she could expect on direct or cross-examination." Ex. D, Trial Court Order, pg. 11.

As to the second prong, the court continued, "[I]n this self-defense case Paige's testimony was crucial, and that had the trier of fact heard testimony similar to that put forth at the post-conviction hearing, both these facts, and Paige's testimony, which would have been an account from the person who directly experienced the events, could have made the trier of fact view Paige's use of the knife in a different

16

light – one that was more defensive." Ex. D, Trial Court Order, pgs. 13-14. The Court noted that Paige's testimony was "consistent with other trial evidence in ways that could support self-defense, second-degree murder, or involuntary manslaughter." *Id.*

Ultimately, it is true that the decision whether to testify is the Defendant's, and the failure to testify is an "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938). But underlying that is the belief that counsel consulted with the client, meaning they have discussed the facts of the case and the evidence so that the Defendant is making an informed choice. Here, the only testimony is that counsel barely reviewed anything with his client, and when he did so it was while speaking through the bars or door of the lockup located behind the courtroom. There was never any sort of one-on-one sit down at the jail or other meaningful visit. When it came to testifying, the only conversation was during court, quickly. As Ms. Paige explained, the plan was always for her to testify, but when that time approached, and counsel had not ever reviewed her potential testimony with her, he whispered into her ear to advise the judge that she did not want to testify. It is foolish to expect that a Defendant is going to have an outright revolt against their attorney's advice during trial.

To be clear, in a case where counsel was asserting the affirmative defense of self-defense, he did not ever sit down with his client and learn the facts from her perspective, nor did he ever review the facts others provided to the police with her. Like the ineffective attorney in *Shannon*, he failed to investigate, prepare, and advise. The failure of Paige's counsel is hauntingly like the failure of *Shannon's* counsel.

The Illinois court's decision that the claim is foreclosed merely because Paige told the trial judge that she did not want to testify is unsupportable under *Strickland*, "to be sure, the fact that Antonio decided not to testify does not foreclose his claim of ineffectiveness as to Hart. Antonio's claim, properly understood, is that his decision not to testify was tainted by Hart's purported failures of investigation, preparation and vis-a-vis prospective testimony." *Id*. The parallels cannot be clearer, and the Illinois court could not be more wrong.

## V.   CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, petitioner IVIVA PAIGE, requests that this Court:

(a) Enter an Order reversing her conviction for First Degree Murder for which she is in custody and order her release;

(b) Remand this matter to the trial court for a new trial; or

(c) Grant any other relief that may be appropriate.

Respectfully Submitted,

IVIVA PAIGE, Defendant

By:/s/ Steven A. Greenberg
One of Her Attorneys

18

## VERIFICATION

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

|  |  |
|---|---|
| August 3, 2023 | /s/ Steven A. Greenberg |
| Date | Steven. A Greenberg |

Steven A. Greenberg
Nick Burris
GREENBERG TRIAL LAWYERS
53 W. Jackson Blvd., Suite 315
Chicago, IL 60604
(312) 399-2711
*Steve@GreenbergCD.com*
*Nick@GreenbergCD.com*

Christopher T. Grohman
Benesch Friedlander Coplan Aronoff LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606-4637
(312) 212-4943
*CGrohman@beneschlaw.com*

19