UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IVIVA PAIGE,<br>         Petitioner<br><br>   v.<br><br>WARDEN JEAN CASE<br>         Respondent | No. 23 CV 5113<br><br>Judge Jeremy C. Daniel |

**MEMORANDUM OPINION AND ORDER**

Petitioner Iviva Paige, a prisoner at Logan Correctional Center, brings this habeas corpus action under 28 U.S.C. § 2254, challenging her 2008 murder conviction from the Circuit Court of Cook County, Illinois. (R. 1.) In her petition, Paige asserts that she was deprived of her right to testify at trial as a result of ineffective assistance of counsel. (*Id.*) The respondent now moves to dismiss Paige's petition as time-barred. (R. 6.) For the reasons discussed below, the Court grants the motion to dismiss. Paige's habeas corpus petition is therefore denied, and the Court declines to issue a certificate of appealability.

# BACKGROUND[1]

## I. PAIGE'S TRIAL

Following a bench trial, Paige was convicted of the first-degree murder of Katrina Adams. *People v. Paige*, 2022 IL App (1st) 200746-U, ¶ 2. Her conviction stemmed from events that occurred on October 11, 2006. *Id.* ¶ 6. That night, Paige and three friends visited a nightclub in Chicago, Illinois. *Id.* There, they encountered Adams, as well as Paige's ex-boyfriend, Devon Heath, and his then-girlfriend, Roshanda Wallace. *Id.* ¶ 7. When Heath and Paige noticed each other, an argument ensued, resulting in a physical altercation. *Id.*

Paige and her friends then exited the nightclub and drove to a second club. *Id.* ¶ 8. While en route, Paige expressed concerns to her friends about Heath following them and asked whether they had anything "for protection." *Id.* Despite her friends encouraging her not to, Paige grabbed a steak knife out of the car's console and placed it in her purse. *Id.*

Sometime after Paige arrived at the second club, Heath and his group arrived. *Id.* ¶ 9. There, another altercation broke out between multiple people, including Heath and Paige. *Id.* ¶ 10. Although Heath and his group were eventually removed from the club, Wallace and Adams remained in the vicinity of the club. *Id.* ¶¶ 10–11.

---

[1] The following facts are drawn from the state court record, (R. 1-1 through 1-9; R. 7), and the state appellate court decisions on direct appeal, (R. 1-8 (*People v. Paige*, No. 1-08-2102 (Ill. App. Ct. 2010) (unpublished order under Illinois Supreme Court Rule 23)), and postconviction appeal, *People v. Paige*, 2022 IL App (1st) 200746-U. The Court presumes that the state court's factual determinations are correct as Paige neither contests them nor points to clear and convincing evidence to the contrary. *See Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citing 28 U.S.C. § 2254(e)(1); *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018)).

When Paige and her friends exited shortly thereafter, Wallace and Adams sprayed mace on them, causing another, more violent fight outside. *Id*. During this fight, witnesses saw Paige stab Adams in the chest multiple times with a knife. *Id*. ¶ 11. Adams died as a result of stab wounds to the chest. *Id*.

Paige was arrested and charged with first degree murder. *Id*. ¶ 13. Her case proceeded to a bench trial during which she asserted the affirmative defenses of self-defense and mutual combat. *Id*. ¶ 14. At the close of the State's case, the trial court admonished Paige that she had a right to testify. *Id*. Paige informed the court that she did not wish to testify, and the defense then rested. *Id*. The trial court found Paige guilty of murder, citing insufficient provocation to support her self-defense claim. *Id*. ¶ 15. She was sentenced to twenty-three years' imprisonment. *Id*. ¶ 2.

## II. DIRECT APPEAL

Paige appealed her conviction, arguing that: (1) her conviction should be reduced from first to second degree murder, (2) the trial court erred when it allowed the State to introduce evidence of her prior bad acts, and (3) her sentence was excessive. (*See* R. 1-8 at 4.) The Illinois Appellate Court affirmed her conviction, (*id.* at 20), and the Illinois Supreme Court denied her petition for leave to appeal ("PLA"). *People v. Paige*, No. 11-1583, 949 N.E.2d 663 (Ill. Mar. 30, 2011) (Table). Paige did not petition the United States Supreme Court for a writ of certiorari. (*See* R. 1 at 3.)

## III. POST-CONVICTION PROCEEDINGS

On September 27, 2011, Paige mailed a *pro se* petition for post-conviction relief to the state trial court. (R. 1-1; R. 1-2 at 2.) Paige was later appointed counsel, who

3

filed a supplemental post-conviction petition in March 2018. (R. 1-2.) Her supplemental petition raised an ineffective assistance of counsel claim, arguing that her trial counsel was constitutionally defective because he failed to properly advise her about exercising her right to testify. (*Id.* at 3–8.) This claim proceeded to the third stage of Illinois' post-conviction proceedings, which allows for an evidentiary hearing. *Paige*, 2022 IL App (1st) 200746-U, ¶ 18. [2]

Both Paige and her trial attorney testified at the evidentiary hearing. *Id.* ¶¶ 18–24. Based on their testimony, the court found that Paige had established ineffective assistance of trial counsel, granted Paige's post-conviction petition, and ordered a new trial. *Id.* ¶ 26. The State appealed, and the Illinois Appellate Court reversed the circuit court's judgment, holding that Paige's ineffective assistance claim was positively rebutted by the record. *Id.* ¶¶ 42, 45. Thereafter, Paige, through counsel, raised her ineffective assistance of trial counsel claim in a PLA to the Illinois Supreme Court. (R. 1-7.) The Illinois Supreme Court denied her PLA on September 28, 2022. *People v. Paige*, 197 N.E.3d 1093 (Ill. Sept. 28, 2022) (Table).

Paige now brings her ineffective assistance of trial counsel claim before this Court in a habeas corpus petition under § 2254. (*See* R. 1.) The respondent argues that the Court cannot reach the merits of Paige's ineffective assistance claim because

---

[2] In Illinois, "[p]ost-conviction petitions are adjudicated through a three-stage process set forth by the Post-Conviction Hearing Act[,] 725 ILCS 5/122-1 *et seq.*" *People v. Gardner*, 810 N.E.2d 180, 184 (Ill. App. Ct. 2004). "In the first stage, the petition must state the gist of a constitutional claim or it will be summarily dismissed . . . At the second stage, the petitioner must make a substantial showing of a constitutional violation to survive dismissal. Only then will the petition advance to the third stage, an evidentiary hearing." *Id.* (citing *People v. Edwards*, 757 N.E.2d 442, 446 (Ill. 2001)).

4

her habeas corpus petition is untimely. (R. 6.) For the reasons discussed below, the Court agrees.

## ANALYSIS

I. **STATUTE OF LIMITATIONS**

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), "a [one]-year period of limitation" applies to "an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). Ordinarily, this one-year clock begins to run "from 'the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.'" *Mayle v. Felix*, 545 U.S. 644, 662 (2005) (quoting § 2244(d)(1)(A)). The AEDPA provides only three circumstances under which a later start date may be used: (1) where the state creates an unconstitutional impediment that prevented the filing of the habeas petition; (2) where the Supreme Court recognizes a new, retroactive constitutional right; and (3) where newly discovered evidence forms the factual predicate of a claim. 28 U.S.C. § 2244(d)(1)(B)-(D). Paige does not argue that any one of these circumstances is applicable here, however. The Court thus addresses timeliness only under § 2244(d)(1)(A).

Under 2244(d)(1)(A), Paige's conviction became final on June 28, 2011, *i.e.*, the date the ninety-day period for filing a petition for writ of certiorari to the U.S. Supreme Court expired. *Anderson v. Litscher*, 281 F.3d 672, 675 (7th Cir. 2002); *see also Gonzalez v. Thaler*, 565 U.S. 134, 137 (2012) ("[F]or a state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' on the date

that the time for seeking such review expires."); U.S. Sup. Ct. R. 13.1 (providing that certiorari petition must be filed within 90 days after entry of state court judgment).

The limitations period ran for ninety-one days until September 27, 2011, the date Paige placed her *pro se* state post-conviction petition in the prison mail system. (R. 1-2 at 2); *see Ray v. Clements*, 700 F.3d 993, 1004 (7th Cir. 2012) (holding prison mailbox rule applies to petitions for state postconviction relief unless state law clearly rejects it); *People v. Shines*, 33 N.E.3d 169, 175 (Ill. App. Ct. 2015) ("Under the mailbox rule, pleadings, including posttrial motions . . . , are considered . . . filed on the day they are placed in the prison mail system by an incarcerated defendant.").

Under 28 U.S.C. § 2244(d)(2), the filing of Paige's post-conviction petition tolled the running of the limitations period. *See Perry v. Brown*, 950 F.3d 410, 412 (7th Cir. 2020) (citing § 2244(d)(2)) ("The time during which a properly filed state collateral attack is pending is excluded from the one year available to file in federal court."). Her post-conviction petition remained pending until September 28, 2022, when the Illinois Supreme Court denied her post-conviction PLA. *See Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008). Excluding the time during which the limitations period was tolled, Paige had 274 days, or until June 29, 2023, to timely file a habeas corpus petition. Paige, however, filed her petition on August 3, 2023, thirty-five days too late.

Paige challenges the calculation of the limitations period on several grounds, but none are availing. First, she argues that her conviction did not become final, and the one-year clock did not begin to run, until September 28, 2022, the date upon which the Illinois Supreme Court denied her post-conviction PLA. (R. 9 at 4.) This is not

6

correct. Section 2244(d)(1)(A) provides that the one-year statute of limitations applicable to state prisoners seeking habeas relief begins to run from the latest of "the conclusion of *direct review* or the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A) (emphasis added). "Accordingly, the statute of limitations imposed by section 2244(d)(1)(A) begins to run (i) when all direct criminal appeals in the state system are concluded, followed by either completion or denial of certiorari proceedings before the United States Supreme Court; *or* (ii) when, if certiorari was not sought, all direct criminal appeals in the state system are concluded, followed by the expiration of the time allotted for filing a petition for writ." *Anderson*, 281 F.3d at 675 (emphasis in original). While a properly filed state post-conviction petition *tolls* this one-year limitations period during the proceedings' pendency; it does not restart the clock. 28 U.S.C. § 2244(d)(2); *see also Lawrence v. Florida*, 549 U.S. 327, 331–36 (2007) (explaining how § 2244(d)(2)'s tolling provision operates); *De Jesus v. Acevedo*, 567 F.3d 941, 943 (7th Cir. 2009) ("[W]hat [§ 2244(d)(2)] does is *exclude* particular time from the year, not *restart* that year.") (emphasis in original).

Second, Paige argues that because she filed her state court post-conviction petition within the sixth month filing period allotted under state law this time period should not be counted against her one-year habeas clock. (R. 9 at 5 (citing 725 ILCS 5/122-1(c).) Section 2244(d)(2)'s "approach to excluding time is straightforward," however: the clock stops once a state post-conviction petition is *properly filed*. *De Jesus*, 567 F.3d at 943; 28 U.S.C. § 2244(d)(2). The time that passed before the state collateral proceeding began is not excluded. *See, e.g., De Jesus*, 567 F.3d at 943 ("So

7

if a state conviction becomes final on March 1, 2008, and a collateral attack in state court begins on July 1, 2008, and lasts until July 1, 2009, the prisoner then has eight months . . . to launch a federal collateral attack.").

Third, Paige contends that her ineffective assistance of trial counsel claim did not become ripe until post-conviction proceedings because that was her first opportunity to develop a record to support her claim. (R. 9 at 5–6.) She therefore argues that the one-year limitations period should not have started until after these proceedings were completed. (*Id.*) In support of this argument, she relies on *Massaro v. United States*, 538 U.S. 500 (2003), which holds that a federal criminal defendant need not raise a claim of ineffective assistance on direct appeal but, instead, may reserve it for a collateral proceeding under 28 U.S.C. § 2255. *Massaro*, however, "is a rule of practice for federal judges in federal criminal cases." *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005). It is neither applicable to § 2254 proceedings nor Illinois state criminal prosecutions. *See id; see also Crutchfield v. Dennison*, 910 F.3d 968, 976 (7th Cir. 2018) ("[T]he Illinois Supreme Court has not discouraged criminal defendants from raising *Strickland* claims on direct review . . . . Nor has the Illinois Supreme Court expressed a preference for reserving these claims for collateral review.").

Paige also cites *Martinez v. Ryan*, 566 U.S. 1 (2012) in support of her proposition that her state court post-conviction proceedings were her first opportunity to raise her ineffective assistance of counsel claim. But that is not so. *Martinez*, together with *Trevino v. Thaler*, 569 U.S. 413 (2013), recognize a limited

8

exception to the general rule that attorney error in state court post-conviction proceedings is not cause for excusing a procedurally defaulted claim on federal habeas corpus review.[3] *See Conner v. Reagle*, 82 F.4th 542, 552–53 (7th Cir. 2023); *Crutchfield v. Dennison*, 910 F.3d 968, 973 (7th Cir. 2018). *Martinez* and *Trevino* recognize limited circumstances in which defaulted claims of trial-counsel ineffectiveness may be excused where, as a matter of state law, the claims could have been raised no sooner than post-conviction proceedings but were not raised due to post-conviction counsel's ineffectiveness. *Conner*, 82 F.4th at 552–53 (citing *Martinez*, 566 U.S. at 8–17; *Trevino*, 569 U.S. at 421–29). Illinois law, however, "gives prisoners a meaningful opportunity to litigate claims of ineffective assistance of trial counsel on direct review." *Crutchfield*, 910 F.3d at 978. The *Martinez-Trevino* exception has therefore not been extended to Illinois prisoners. *Id.*

In any event, *Massaro* and *Martinez-Trevino* speak to exhaustion, a distinct procedural doctrine that Paige seems to conflate with timeliness. "Exhaustion affords States 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights[.]'" *Shinn v. Ramirez*, 596 U.S. 366, 378 (2022) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3, (1981) (*per curiam*)). Thus, before seeking habeas relief in federal court, a state prisoner must exhaust his or her remedies through one complete round of state court review, either on direct review *or* in post-conviction proceedings. *See Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018); *McGhee v. Watson*, 900 F.3d 849, 854 (7th Cir. 2018); 28 U.S.C. § 2254(b)(1)(A). Here, there is no exhaustion issue.

---

[3] This is so because there is no Sixth Amendment right to counsel post-conviction proceedings. *Crutchfield*, 910 F.3d at 973 (citing *Davila v. Davis*, 582 U.S. 521, 524 (2017)).

Paige raised her ineffective assistance claim at each level of state court on post-conviction review. Thus, "ripeness" is not the procedural flaw preventing this Court from reaching the merits of her claim. *Cf. United States ex rel. Montgomery v. Butler*, 83 F. Supp. 3d 787, 789 (N.D. Ill. Mar. 17, 20150 ("[T]here is no indication that any of [the petitioner's] seven current [claims] are unexhausted at the state level and are therefore unripe for federal disposition . . ."). Rather, the issue is the running of the limitations period, which began the date her conviction became final on June 28, 2011.

Finally, Paige asserts that her § 2254 petition is not untimely because it attacks the state court order "entered in 2020 and reversed in 2022." (R. 9 at 9.) But a federal court will entertain a § 2254 petition only if the petitioner is "in custody" pursuant to a state court judgment "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254; *see also Stanbridge v. Scott*, 791 F.3d 715, 718 (7th Cir. 2015). Paige is in custody pursuant to her 2008 criminal conviction; not a 2020 state court order issued in a civil, post-conviction proceeding. Of course, before she could seek federal habeas corpus review, Paige had to first give the state courts an opportunity to correct the constitutional violation that she now alleges. *See Shinn*, 596 U.S. at 378. But the state post-conviction court's adjudication of her constitutional claim is not the "final" decision for purposes of calculating the statute of limitations; rather, the state court's decision is what Paige must demonstrate was "contrary to" or involved an "unreasonable application of" Supreme Court precedent

10

to be entitled to federal habeas corpus relief. *See Pierce v. Vanihel*, 93 F.4th 1036, 1044–45 (7th Cir. 2024) (citing 28 U.S.C. § 2254(d)).

None of the state court decisions on post-conviction review affected the finality of Paige's 2008 conviction. As discussed above, her post-conviction petition did not restart the one-year limitations period. *De Jesus*, 567 F.3d at 943. Nor did Paige obtain post-conviction relief that led to a new final decision. *Compare Jimenez v. Quarterman*, 555 U.S. 113, 121 (2009) (holding that where a state court grants a defendant the right to file an out-of-time direct appeal on collateral review, the federal clock begins anew), *with Turner v. Brown*, 845 F.3d 294, 298 (7th Cir. 2018) (holding habeas petitioner's 2013 resentencing had no effect on date for calculating the timeliness of his habeas petition because the resentencing had no effect on the conviction he was challenging). Here, Paige's 2008 murder conviction and accompanying sentence were unaffected by the state post-conviction court's grant of a new trial because that decision was ultimately reversed by the state appellate court. Paige's conviction, thus, remained final. *See Turner*, 845 F.3d at 298. And the date by which her conviction became final remained unchanged.

In sum, the arguments that Paige advances in support of altering the calculation of the running of the statute of limitations under § 2244(d)(1)(A) are unavailing. Her conviction became final on June 28, 2011, ninety-one days elapsed before the limitations period was tolled under § 2244(d)(2), and, after the Illinois Supreme Court denied her postconviction PLA on September 28, 2022, she had 274

11

days left to file a timely habeas corpus petition. Her petition, filed on August 3, 2023, was thirty-five days past this deadline.

## II. EQUITABLE TOLLING

Having concluded that Paige's petition was untimely, the Court considers whether to equitably toll the statute of limitations period. "Equitable tolling is rarely granted." *Simms v. Acevedo*, 595 F.3d 774, 781 (7th Cir. 2010); *see also Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016) ("Although not a 'chimera—something that exists only in the imagination,' . . . equitable tolling is an extraordinary remedy that is 'rarely granted.'"). To be entitled to equitable tolling, Paige must establish "'(1) that [s]he has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way' and prevented timely filing." *Moreland v. Eplett*, 18 F.4th 261, 270 (7th Cir. 2021) (citations omitted). The Court will not apply equitable tolling if either of these elements are not met. *Id.*

Paige fails to establish either prong. First, Paige's argument that she was diligent because she filed for post-conviction relief soon after her direct appeal is not persuasive. Not only is "reasonable effort throughout the limitations period [ ] required," *Mayberry*, 904 F.3d at 531, but "the length of time remaining for the applicant to file [her habeas petition] is quite pertinent" to the diligence inquiry. *Gray v. Zatecky*, 865 F.3d 909, 913 (7th Cir. 2017). Paige had over nine months to file a timely habeas corpus petition following the conclusion of her state post-conviction proceedings. She provides no explanation for why she could not file a petition during this time. *See Moreland*, 18 F.4th at 271 ("Reasonable diligence requires that [the habeas petitioner] prove he diligently tried to protect his rights over time, not just at

12

some points … [during] the limitations period."). The Court, thus, does not find that Paige exercised reasonable diligence. *See Pace v. DiGuglielmo*, 544 U.S. 408, 419 (2005) (petitioner who "sat" on his rights "for five more months *after*" his state postconviction proceedings concluded before filing an untimely habeas petition in federal court did not demonstrate reasonable diligence for purposes of equitable tolling).

Second, to the extent Paige argues that she miscalculated or was confused about the time remaining in the one-year limitations period, such an argument does not warrant equitable tolling. Rather, "[a]n extraordinary circumstance justifying equitable tolling must involve something beyond the petitioner's control," and Paige's mistake in calculating the filing deadline does not count. *Conner*, 82 F.4th at 549 (rejecting the petitioner's argument that his counsel's incorrect advice about when to file his habeas petition constituted equitable tolling); *see also Moreland*, 18 F.4th at 271 (explaining that, for purposes of demonstrating extraordinary circumstances, "simple legal errors, such as ignorance of the federal deadline [will] not suffice.") Because Paige has failed to show that she diligently pursued her rights and that extraordinary circumstances prevented her from timely filing her petition, she is not entitled to equitable tolling. Her habeas corpus petition remains untimely and is therefore, denied.

### III. CERTIFICATE OF APPEALABILITY

The Court declines to issue a certificate of appealability. Such a certificate may not issue unless Paige makes "'a substantial showing of the denial of a constitutional right'" and error with the Court's procedural determinations. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (quoting 28 U.S.C. § 2253(c)). Paige must show that

reasonable jurists could debate whether the Court should have resolved her claims differently or that the issues are "adequate to deserve encouragement to proceed further." *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing *Slack*, 529 U.S. at 484). Paige has not made such a showing.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, the respondent's motion to dismiss [6] is granted and the petitioner's habeas corpus petition [1] is denied as untimely. The Court declines to issue a certificate of appealability. The Clerk is instructed to (1): terminate Respondent Warden Jean Case and replace him with Melinda Eddy, Warden, Logan Correctional Center; (2) alter the case caption to *Paige v. Eddy*; and (3) enter judgment in favor of the respondent. The petitioner's motion to set a status date [13] is denied as moot. Civil case terminated.

Date: July 17, 2024

JEREMY C. DANIEL
United States District Judge